UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<div style="float:right">
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/19/2021
</div>

MOHAMED K. MANSARAY,

                Plaintiff,

v.

KRAUS SECURITY SYSTEMS AND ALFRED ROBINSON, SECURITY DIRECTOR,

                Defendants.

No. 20-CV-1415 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Mohamed K. Mansaray, proceeding *pro se*, filed this action against his former employer, Defendant Kraus Security Systems, and its security director, Alfred Robinson, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*.[1] Now before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted. In light of Plaintiff's *pro se* status, however, Plaintiff is also granted leave to file an amended complaint. All amendments to the complaint must be made in good faith, and Plaintiff must file the amended complaint by February 19, 2021. If Plaintiff fails to file an amended complaint by that date, this case will be dismissed with prejudice.

## BACKGROUND

The following facts are drawn from Plaintiff's complaint, Dkt. 2 ("Compl."), and are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861

---

[1] The Clerk of Court is respectfully directed to amend the case caption as above.

F.3d 31, 35 (2d Cir. 2017). The Court also considers the factual allegations contained in Plaintiff's opposition memorandum, Dkt. 20 ("Pl. Mem."), as well as a declaration filed at Dkt. 8, treating them as supplementing the original complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

Plaintiff is a "Black male of African descent." Pl Mem. at 2; Compl. at 5. In November 2018, he was interviewed and hired by Defendant Alfred Robinson to work as a security guard for Kraus Security. Pl Mem. at 2. For several months, he was placed as a guard at a construction project at Twin Parks, a residential development in the Bronx, working Tuesdays through Fridays from 8:00 a.m. until 4:00 p.m. *Id*. When Robinson hired Plaintiff, Robinson knew that Plaintiff had another job and could not work on weekends. *Id*.

In February 2019, sometime after hiring a security guard named Crystal Andrews to work at Twin Parks, Robinson asked Plaintiff to work weekends, which he declined to do because of his other job. *Id.* Crystal Andrews told Plaintiff that she and Robinson had known each other for over twenty years. Compl. at 5; *see also* Dkt. 8. Plaintiff was then transferred to work at another site, Highbridge, and his work hours were reduced twice, before he was ultimately terminated in April 2019. Pl. Mem. at 2–3. Defendants' stated reason for firing Plaintiff was that they had lost a contract with a construction company and would be firing several security officers. Pl. Mem. at 3; Dkt. 8 at 6. Although both Crystal Andrews and another guard named Ms. Johnson[2], who replaced Plaintiff at Highbridge, are Black, neither is "of African descent." Pl. Mem. at 3.

---

[2] Defendants assert that Monti Johnson, an African-American man, was the only security officer with the last name Johnson employed by Kraus while Plaintiff worked there. Defs.' Mem. at 4.

Plaintiff had more seniority than both of them, as determined by his date of hire with the employer. *Id*.

In February 2020, after exhausting administrative remedies with the EEOC, Plaintiff filed the instant action, asserting that his firing "was racially motivated because of my race as an African." Compl. at 5. Defendants moved to dismiss in July 2020, arguing that (1) Plaintiff's claims against Robinson should be dismissed because individuals are not liable under Title VII; (2) Plaintiff failed to exhaust remedies under the collective bargaining agreement; and (3) Plaintiff failed to sufficiently allege a prima facie case for unlawful discrimination under Title VII.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the discrimination context, "a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Additionally, on a motion to dismiss, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed.*

*Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The Court may also consider and construe liberally allegations contained in a *pro se* plaintiff's opposition papers. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). Typically, a *pro se* plaintiff must be "grant[ed] leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," unless doing so would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted).

## DISCUSSION

### I. Plaintiff Was Not Required to Exhaust Contractual Remedies

Defendants first argue that the complaint must be dismissed because Plaintiff failed to exhaust the contractual remedies spelled out in his collective bargaining agreement ("CBA"). This argument fails.

Article XVIII of Plaintiff's CBA provides that "[a]ny grievance arising out of the interpretation or application of this Agreement, other than matters referred to elsewhere in this Agreement which are excluded from the Grievance and Arbitration Procedure, shall be disposed of" in accordance with a three-step procedure spelled out in the agreement. *See* Dkt. 12-3 at 10. Defendants argue that Plaintiff's discrimination claim falls within the ambit of this provision, as it involves Plaintiff's assertion that he is senior to the guards who replaced him, and the seniority of employees is determined in accordance with the CBA. *See* Defs.' Mem. at 10. The CBA also includes a provision requiring the employer to "comply with State and Federal Laws prohibiting discrimination against or in favor of any employee on account of race, creed, national origin, sex, or age." Dkt. 12-3 at 9–10.

As the Supreme Court has held, a "collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [federal anti-discrimination] claims is

enforceable as a matter of federal law." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009). *See Veliz v. Collins Bldg. Servs., Inc.*, No. 10-CV-6615 (RJH), 2011 WL 4444498, at *3 (S.D.N.Y. Sept. 26, 2011) (applying *Pyett* to Title VII claims). But when a CBA does not clearly and unmistakably require arbitration of federal antidiscrimination claims—for example, by identifying the relevant statutes—arbitration of those claims is not required. *See Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 359–361 (S.D.N.Y. 2016) (finding that a CBA did not mandate arbitration of statutory claims where the CBA did not specifically name the statutes as subject to arbitration); *Shipkevich v. Staten Island Univ. Hosp.,* No. 08-CV-1008 (FB), 2009 WL 1706590, at *2 (E.D.N.Y. June 16, 2009) (CBA did not mandate arbitration of plaintiff's Title VII claim where, despite a general antidiscrimination provision in the agreement, "[n]owhere in the CBA [was] there an explicit statement that such claims are subject to mandatory arbitration").

No such clear and unmistakable waiver is present here. The CBA does not specify that Title VII claims are subject to its grievance procedure; its nondiscrimination provision is exactly the sort of general statement that courts have held does not waive the right to bring Title VII claims in federal court. *See Fernandez*, 159 F. Supp. 3d at 359; *Shipkevich,* 2009 WL 1706590, at *2; *Viruet v. Port Jervis City Sch. Dist.*, No. 11-CV-1211 (ER), 2013 WL 4083229, at *6 (S.D.N.Y. Aug. 13, 2013) (CBAs require plaintiffs to submit antidiscrimination claims to arbitration only when they "*explicitly* state that discrimination claims . . . shall be subject to the grievance procedures of the collective bargaining agreements"). Moreover, the mere fact that Plaintiff asserts his seniority over other employees does not convert his Title VII claim into one "arising out of the interpretation or application" of the CBA. Plaintiff's claim is not that Defendants violated the CBA—it is that they discriminated against him on the basis of his

5

national origin. Even if Defendants' actions in changing Plaintiff's work schedules and terminating his employment all complied with the relevant portions of the CBA, they would still violate the law if they were done "because of [Plaintiff's] . . . national origin." 42 U.S.C. § 2000e-2. *See Viruet*, 2013 WL 4083229, at *6 (plaintiff was not required to file a grievance under the CBA prior to bringing a federal lawsuit where, even though "Defendant's defenses to Plaintiff's allegations may rely on its interpretation of the CBA, Plaintiff clearly states a claim of discrimination under Title VII that does not solely rely upon allegations that [the defendant] inequitably or incorrectly applied the provisions of the CBA."). Because the CBA does not clearly and unmistakably require arbitration of Title VII claims, and because Plaintiff's discrimination claim does not "aris[e] out of the interpretation or application of" the CBA, Plaintiff's failure to exhaust contractual remedies does not furnish a basis to dismiss the complaint.

### II.     The Complaint Fails to State a Claim Under Title VII

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To defeat a motion to dismiss, a plaintiff must allege "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original). Here, as Defendants do not dispute that Plaintiff is a member of a protected class or that he was qualified for employment as a security guard, the Court's analysis focuses on the third and fourth requirements listed above.

Defendants first argue that Plaintiff did not suffer an adverse employment action, seeing as "the employer had the right to determine the Plaintiff's work schedule" and Plaintiff "refused to work his assigned schedule." Defs.' Reply Mem. at 5. The Court disagrees. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment," including "termination of employment." *Vega*, 801 F.3d at 85 (internal citations and quotation marks omitted). Here, there is no question that Plaintiff was ultimately fired. Although Defendants argue that Plaintiff "subjected himself to termination" by refusing to work hours that were assigned to him in accordance with his collective bargaining agreement, Defs.' Mem. at 12, this is a dispute about the *reason* Plaintiff was fired. *See Melie v. EVCI/TCI Coll. Admin.*, No. 08 CIV. 5226 (HB), 2009 WL 1404325, at *6 (S.D.N.Y. May 20, 2009), *aff'd*, 374 F. App'x 150 (2d Cir. 2010) (the fact that a change in the terms of employment "was accomplished in accordance with [a] [collective bargaining agreement] does not necessarily immunize it from constituting an adverse employment action"). The Court finds that Plaintiff has sufficiently alleged that he suffered an adverse employment action.

The Court agrees with Defendants, however, that Plaintiff has failed to allege sufficient facts to give rise to "an inference of discriminat[ion]" on the basis of national origin. *Littlejohn*, 795 F.3d at 311. To sustain this "minimal burden," a plaintiff must plead facts showing either "direct evidence of intent to discriminate" or "circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected

7

group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009)).

There is nothing in Plaintiff's complaint or opposition papers that constitutes direct evidence of discrimination, such as comments about his race or national origin. The only basis to infer discrimination put forward by Plaintiff is that he was replaced in his positions at Twin Parks and Highbridge by security guards who were "non-African." Pl. Mem. at 9. Under the circumstances of this case, the Court finds that these allegations are insufficient to give rise to an inference of discrimination.

Although the Second Circuit has stated that "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis," *Littlejohn*, 795 F.3d at 313, that is not the end of the inquiry. The Circuit has also cautioned that in the Title VII context, courts "may not consider a particular allegation in isolation," and that the inference of discrimination to be drawn from an allegation that plaintiff was replaced by someone outside his protected class can be diminished by other allegations in the complaint. *See Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017). In *Franchino*, the Second Circuit affirmed the district court's dismissal of a male plaintiff's sex discrimination claim, finding that the mere fact that plaintiff was replaced by a female employee did not plausibly suggest discrimination when the rest of the complaint "undercut" any such suggestion. *Id*.

Here, for several reasons, the pleadings as a whole undercut the inference of discriminatory animus that could be drawn from the fact that Plaintiff was replaced by "non-African" security guards. First, Plaintiff's allegations suggest that Robinson had a long-standing

personal relationship with Crystal Andrews, which weakens any inference that Robinson's hiring of Andrews in place of Plaintiff was the result of national-origin discrimination. Plaintiff alleges that "Crystal Andrew[s] was always telling me . . . that she had known Robinson the security boss for over 20 years," Compl. at 5, and that Andrews "bragg[ed]" to him that "she and the security director Robinson are best of friends." Dkt. 8 at 3. Needless to say, Title VII does not "forbid[ ] favoritism, nepotism, or cronyism, so long as it is not premised on animus against a protected class." *Village of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016). Plaintiff's pleadings themselves offer a lawful and plausible explanation for why Robinson might have treated Andrews preferentially.

Second, any inference of discriminatory motivation is undermined by the so-called "same actor inference." *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."). Here, it is undisputed that Robinson personally hired Plaintiff in November 2018 and personally fired him approximately six months later in April 2019. "[W]here [a] termination occurs within a relatively short time after [a] hiring there is a strong inference that discrimination was not a motivating factor in the employment decision," since it is less likely that the person who hired the plaintiff developed animus toward a class of people that did not exist at the time of the hiring decision. *Carlton*, 202 F.3d at 137 (collecting cases for the proposition that the same-actor inference applies when less than two years has elapsed between the hiring and firing).

Plaintiff notes, correctly, that the same actor inference "may be rebutted . . . where there is reason to suspect that the initial decision to hire was consistent with a discriminatory motive."

9

*Hagan v. City of New York*, 39 F. Supp. 3d 481, 498 (S.D.N.Y. 2014). He observes that "Defendants hired Plaintiff, along with two other males of African origin, to work at a location [Twin Parks] that they believed was too dangerous for other employees." Pl. Mem. at 10. Under some circumstances, the fact that someone was hired to work at a dangerous location might be fully consistent with discriminatory intent toward people in his protected class. But the pleadings make clear that non-Africans were staffed at Twin Parks, too; a significant basis of Plaintiff's claim is that Andrews (a non-African) replaced Plaintiff in his position there. *See* Pl. Mem. at 3. It is therefore not plausible to suggest that Defendants' hiring of Plaintiff to work at Twin Parks was reflective of a discriminatory motive on their part.

Finally, the pleadings suggest that Plaintiff and his replacements may not have been similarly situated in all material respects, which weakens the inference that Plaintiff was replaced due to discrimination against Africans. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (a plaintiff attempting to "show[ ] that the employer treated [her] less favorably than a similarly situated employee outside [her] protected group . . . must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself" (internal quotation marks omitted)). Although Plaintiff asserts that he was senior to Andrews and Johnson, *see* Pl. Mem. at 9, Plaintiff appears to acknowledge that there was a distinction between his employment status and that of Johnson and Andrews, noting that he "does not technically meet the definition of full-time employee," even if he was "treated" as such, *see id*. at 3 n. 2. Defendants, meanwhile, assert that Andrews and Johnson were full-time security officers. Defs.' Mem. at 4. In the event that Plaintiff chooses to file an amended complaint, he should, if he has a good-faith basis to do so, include allegations tending to show that Plaintiff, Andrews, and Johnson were similarly situated with respect to the terms of their employment.

In sum, the Court finds that any inference of discrimination to be drawn from the fact that Plaintiff's replacements were not African is undercut by other allegations in the complaint and opposition papers, such that, viewing Plaintiff's pleadings as a whole, Plaintiff has failed to make out a prima facie case of national origin discrimination under Title VII. *See Franchino*, 692 F. App'x at 43.

### III.  Claims Against Robinson Individually

Defendants also argue that Robinson is not a proper defendant in this action, accurately observing that Title VII makes employers, but not individual supervisors and co-workers, liable for unlawful discrimination. *See Raspardo v. Carlone,* 770 F.3d 97, 113 (2d Cir. 2014) (Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers."). Plaintiff concedes that Robinson is not liable under Title VII, but argues that his complaint should be liberally construed to suggest claims under the New York State Human Rights Law and the New York City Human Rights Law, both of which permit suits against individual supervisors. *See Feingold v. New York*, 366 F.3d 138, 157-59 (2d Cir. 2004); s*ee also McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) (district court should have construed *pro se* Plaintiff's form discrimination complaint as raising claims under state and city law, because "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.").

At present, this distinction is moot in light of the Court's finding that the operative complaint fails to make out a prima facie case of employment discrimination against any defendant. However, should Plaintiff choose to file an amended complaint, he should indicate whether he intends to pursue claims against Robinson individually under the laws of the city and state of New York.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted. However, Plaintiff is granted leave to file an amended complaint that corrects the deficiencies identified above, should he have a good faith basis to do so. Plaintiff must file the amended complaint by February 19, 2021; failure to do so will result in dismissal of this case with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 12. The Clerk of Court is further directed to mail a copy of this order to Mr. Mansaray.

SO ORDERED.
Dated:   January 19, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge