```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 2/14/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOHAMED K. MANSARAY,

                Plaintiff,

        v.

KRAUS SECURITY SERVICE and
ALFRED ROBINSON, SECURITY
DIRECTOR,

                Defendants.

No. 20-CV-1415 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Mohamed K. Mansaray, proceeding *pro se*, brings this action against his former employer, Defendant Kraus Security Systems, and its security director, Alfred Robinson, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 41 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967 ("ADEA"). On January 19, 2021, the Court dismissed Plaintiff's initial complaint asserting discrimination based on his race and national origin, but granted him leave to file an amended complaint. *Mansaray v. Kraus Sec. Sys.*, No. 20-CV-1415 (RA), 2021 WL 183275 (S.D.N.Y. Jan. 19, 2021) (the "2021 Opinion"). Mr. Mansaray subsequently filed his First Amended Complaint ("Am. Compl."), asserting discrimination based on his race, national origin, and age, and alleging that he was subjected to harassment and a hostile work environment. Now before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

## BACKGROUND

The following facts are drawn from Plaintiff's First Amended Complaint, Dkt. 26, and are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers the factual allegations contained in Plaintiff's opposition memorandum, Dkt. 32 ("Pl.'s Mem."), as supplementing the original complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

Plaintiff identifies himself to be "of African descent." Am. Compl. at 4. In November 2018, he was interviewed and hired by Defendant Alfred Robinson to work as a security guard for Kraus Security. *Id.* at 5. When he was hired, Plaintiff told Mr. Robinson that he would be unavailable to work on weekends because he had another job. For several months, Mr. Mansaray was assigned to a construction project at a location called Twin Parks in the Bronx, working Tuesdays through Fridays from 8:00 a.m. until 4:00 p.m. He worked at the Twin Parks site along with Victor Asake and Emmanuel Onobreky, two other males of African descent, as well as a guard named Gilbert, also of African descent. *Id.* at 5–6.[1] Plaintiff asserts that one of his supervisors informed them "that the previous guards had quit the assignment because of the dangerous nature of the place." *Id.* at 5.

In February 2019, Kraus hired a security guard named Crystal Andrews to work at Twin Parks. Plaintiff alleges that Ms. Andrews is Black, but is not "of African descent." *Id.* at 6. Several days later, on February 22, 2019, Mr. Robinson asked Plaintiff to work weekends, and stated that if he refused, he would be transferred to another location and his work hours would be reduced.

---

[1] Defendants assert that Gilbert Brimah is the only security officer employed at Kraus named Gilbert. Defs.' Mem. at 5.

Pl.'s Mem. at 3. Mr. Mansaray declined due to his other weekend job. On April 1, 2019, Mr. Robinson approached him a second time, inquiring again about whether he would be willing to work weekends. When Plaintiff once again declined, explaining that he had previously expressed that he would be unable to do so, Mr. Robinson responded by telling him that he was "lucky that you have already passed your probation you should have been fired for disobeying my order." *Id.* Mr. Mansaray was then transferred to work at another site, Highbridge, where his work hours were reduced from four to three days per week. *Id.* at 2. He understood Mr. Robinson's statement to him to mean that Mr. Robinson would have preferred to have fired him immediately instead of transferring him. *Id.* Upon being transferred to Highbridge, Mr. Mansaray asserts that he was replaced at the Twin Parks site by "two African Americans and one Latino" security guards with less seniority than him.[2] Pl.'s Mem. at 3.

Approximately one week later, on April 9, 2019, Plaintiff was informed by one of his supervisors that his hours were further reduced to two days per week. The next day, Mr. Robinson terminated him by phone, citing the reason for his termination as "loss of contract." Am. Compl. at 6; Pl.'s Mem. at 3.

According to Plaintiff's allegations, one of the individuals who replaced him at Highbridge was a Black woman who was not of African descent. Am. Compl. at 6. Neither that guard nor Ms. Andrews worked weekends. *Id.* Finally, the pleadings appear to suggest that at some point after Mr. Mansaray left Twin Parks, both Emmanuel Onobreky and Gilbert were also transferred from that site. *Id.*[3]

---

[2] Elsewhere, Mr. Mansaray alleges that Kraus "brought in three other African American Security guards, one male and one female, including one male Spanish speaking from the High bridge [sic] with less seniority to replace us." Am. Compl. at 6.

[3] Specifically, Mr. Mansaray asserts: "[M]yself[,] Emmanuel and Gilbert are all of African descent. Since then I have know [sic] where both of them were transferred." *Id.*

After timely filing a charge with the EEOC alleging employment discrimination, Plaintiff filed his first complaint in this action in February 2020, asserting that his firing was racially motivated. In January of 2021, the Court granted Defendants' Motion to Dismiss but also granted Mr. Mansaray leave to amend to include additional facts supporting his claim. Plaintiff's amended complaint alleges discrimination based on his race, national origin, and age, and asserts that he was subjected to harassment and a hostile work environment. Defendants moved to dismiss, arguing that (1) Plaintiff's claims against Mr. Robinson as an individual should be dismissed; (2) Plaintiff failed to exhaust administrative remedies for his age discrimination claim; and (3) that he failed to sufficiently allege a prima facie case for unlawful discrimination under Title VII, 41 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967. For the following reasons, the motion is granted.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4] For a discrimination claim to survive a motion to dismiss, "a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35.

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

The Court must liberally construe a *pro se* plaintiff's allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The Court may also consider and similarly construe allegations contained in a *pro se* plaintiff's opposition papers. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

## DISCUSSION

### I. The Complaint Fails to State a Claim Under Title VII

#### A. Wrongful Termination

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To defeat a motion to dismiss, a plaintiff must allege "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original). As was the case in the prior motion to dismiss, Defendants do not dispute that Plaintiff is a member of a protected class or that he was qualified for employment as a security guard. As such, the Court's analysis once again focuses on the third and fourth requirements listed above.

Defendants argue that neither being transferred, having your hours adjusted, nor being asked to work weekends constitute adverse action. While that may be true, there is no dispute that Plaintiff was ultimately fired. Mr. Mansaray has thus sufficiently alleged that he suffered an adverse employment action.

The Court agrees with Defendants, however, that Plaintiff has once again failed to allege sufficient facts to give rise to "an inference of discriminat[ion]" on the basis of his race or national origin. *Littlejohn*, 795 F.3d at 311. The amended complaint and opposition papers do not provide any facts that constitute direct evidence of discrimination, such as comments about his race or national origin. Interpreting Plaintiff's allegations "to raise the strongest arguments that they suggest," *Triestman*, 470 F.3d at 474, two possible bases for the Court to infer discrimination appear to be that Plaintiff was replaced in his positions at Twin Parks and Highbridge by security guards who were not of African descent, and that he and two other African guards were transferred from Twin Parks. Under the circumstances of this case, the Court finds that these allegations are insufficient to give rise to an inference of discrimination.

The Second Circuit has explained that "[t]he fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis." *Littlejohn*, 795 F.3d at 313. But the Circuit has also cautioned that in the Title VII context, courts "may not consider a particular allegation in isolation." *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017).

As the Court held in the 2021 Opinion, the pleadings as a whole undercut the inference of discriminatory animus that could be drawn from the fact that Plaintiff was replaced by security guards with less seniority who were not of African descent. 2021 WL 183275 at *5 ("[T]he Court finds that any inference of discrimination to be drawn from the fact that Plaintiff's replacements were not African is undercut by other allegations in the complaint and opposition papers."). Plaintiff has not alleged any new facts in his amended complaint that change this analysis.

Further, any inference of discriminatory motivation is undermined by the "same actor inference." *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000). It is undisputed that Mr. Robinson personally hired Plaintiff in November 2018 and personally fired him approximately six months later in April 2019. It is true that the same actor inference may be rebutted "where there is reason to suspect that the initial decision to hire was consistent with a discriminatory motive." *Hagan v. City of New York*, 39 F. Supp. 3d 481, 498 (S.D.N.Y. 2014). Plaintiff notes that he, Victor Asake, Emmanuel Onobreky, and Gilbert, who are all of African descent, "were the first Security guards assigned to work at [Twin Parks] when the crime rate was so high." Am. Compl. at 5–6. He also alleges that they were "told that the previous guards had quit the assignment because of the dangerous nature of the place." *Id.* at 5. As discussed in the prior opinion, in some cases, the fact that several members of a protected class were hired to work at a dangerous location might be consistent with discriminatory intent toward people in that class. Here, however, the pleadings undercut that rationale. Rather than alleging that Defendants only hired guards of African descent to work at Twin Parks, the pleadings make clear that guards who were not of African descent also worked at the site, including Ms. Andrews and the Latino guard who replaced Plaintiff. It is therefore not plausible to suggest that Defendants' hiring of Plaintiff to work at Twin Parks was reflective of a discriminatory motive on their part.

The pleadings also suggest that Plaintiff and his replacements at both Twin Parks and Highbridge were not similarly situated in all material respects, thus weakening the inference that Plaintiff was replaced due to discrimination against individuals of African descent. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). The Court previously noted an apparent distinction between Mr. Mansaray's employment status and that of the guards who replaced him. The Court nonetheless invited Plaintiff to amend his complaint to include additional facts to bolster

his allegation that he was similarly situated to the guards who replaced him. The only additional fact that Mr. Mansaray now alleges is that neither Ms. Andrews nor one of the guards who replaced him at Highbridge worked weekends. The fact that these two guards did not work weekends is alone insufficient to suggest that he was similarly situated to all of the guards who replaced him. Notably, there were other guards who replaced him at Twin Parks who he does not assert had the weekends off. As such, the Court finds that Plaintiff does not sufficiently allege that he was similarly situated to the guards who replaced him.

Finally, Mr. Mansaray's allegation that Onobreky and Gilbert were eventually both also transferred from Twin Parks is insufficient to infer discriminatory motivation. Given his contention that these three men of African descent were all initially assigned to Twin Parks because of how dangerous it was, it is unclear why a transfer from that location would not have been desirable to him. Moreover, Plaintiff does not allege that either Onobreky or Gilbert were terminated.

In sum, the Court again finds that the only arguable inferences of discrimination are undercut by other allegations such that, viewing Plaintiff's pleadings as a whole, he still fails to make out a prima facie case of national origin or racial discrimination under Title VII. *See Franchino*, 692 F. App'x at 43.

### B. Harassment and Hostile Work Environment

Plaintiff also claims that Defendants harassed him and created a hostile work environment. *See* Am. Compl. at 5. To establish harassment or a hostile work environment, a plaintiff "must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21. This standard has both objective

and subjective components: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321. "[T]he plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

The only conduct that Plaintiff describes in support of his hostile work environment claim is the statement that Mr. Robinson said to him after he refused to work weekends a second time: "You are lucky that you have already passed your probation you should have been fired for disobeying my order." Pl.'s Mem. at 3. Not only does this fail to establish that Mr. Mansaray's workplace was so permeated with "severe or pervasive" "intimidation, ridicule, and insult" that a reasonable person would perceive it to be abusive, *Littlejohn*, 795 F.3d at 320–21, but he alleges no facts to suggest that the statement was made because of any protected characteristic. As such, Plaintiff has failed to plead sufficient facts to allege that he was subjected to harassment or a hostile work environment.

## II. The Complaint Fails to State a Claim Under § 1981

To prevail on his claim under 42 U.S.C. § 1981, Plaintiff must show: (1) that he is a member of a racial minority; (2) that Defendants intended to discriminate against him on the basis of race; and (3) "discrimination concerning one of the statute's enumerated activities," that is, "the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (quoting 42 U.S.C. § 1981(a)); *see also Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 133 (S.D.N.Y. 2020). Racial discrimination claims

9

under § 1981 are analyzed under the same framework as Title VII claims. *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

Because the Court finds that Plaintiff has failed to adequately allege facts to plausibly support his Title VII claim, his § 1981 claim fails for the same reason—he has not alleged sufficient facts to set forth a prima facia case of discrimination based on his race.

### III. Plaintiff's Claim Under the ADEA

Defendants argue that Plaintiff's claim under the ADEA must be dismissed for failure to exhaust administrative remedies and, in the alternative, for failure to sufficiently state an age discrimination claim. For the reasons that follow, the Court finds that Plaintiff's ADEA claim must be dismissed.

#### A. Administrative Exhaustion

As an initial matter, Defendants assert that Mr. Mansaray failed to exhaust administrative remedies by not alleging age discrimination in his EEOC complaint. Under the ADEA, "a claimant may bring suit in federal court only if [he] has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). The Second Circuit, however, has recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Id.* Under this "reasonably related" doctrine, "an EEOC charge exhausts not only those claims expressly included in the EEOC charge but also all claims based on conduct that would fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the EEOC charge." *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 199 (S.D.N.Y. 2021). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the

discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

Here, Plaintiff submitted the EEOC notice of right-to-sue letter with his initial complaint, but did not include the EEOC charge itself. The Court is therefore ill-positioned to determine whether his claim of age discrimination is reasonably related to his complaints included in his EEOC charge. In any event, for the reasons described below, Plaintiff's ADEA claim fails because he does not sufficiently allege facts to support an inference of discrimination on the basis of his age.

### B.   The Complaint Fails to State a Claim Under the ADEA

The ADEA makes it illegal for employers to discriminate against employees over the age of forty. *See* 29 U.S.C. §§ 621–634. "To make out a *prima facie* case of age discrimination, a plaintiff must demonstrate membership in a protected class, qualification for the position, an adverse employment action, and circumstances supporting an inference of age discrimination." *Munoz–Nagel v. Guess, Inc.*, No. 12–CV–1312 (ER), 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013). That said, a "[p]laintiff need not make out a *prima facie* case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that [he] is entitled to relief and that gives [the defendant] fair notice of the age discrimination claim and the grounds upon which it rests." *Id.*

As with claims brought pursuant to § 1981, courts analyze ADEA discrimination claims under the same framework as those brought pursuant to Title VII. *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *see also Littlejohn*, 795 F.3d at 311 (stating that a plaintiff must plead facts giving "plausible support to a minimal inference of discriminatory motivation").

Here, Plaintiff alleges no facts in support of an inference that he was discriminated against based on his age. He includes no allegations, for example, that Mr. Robinson or the other guards made any comments about his age, nor does he allege the ages of the guards who replaced him. As such, he fails to plead sufficient facts to support his ADEA claim.

### IV.     Claims Against Robinson Individually

Individual supervisors and co-workers are not liable under Title VII or the ADEA. *See Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) ("[Title VII] does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers."); *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (same for the ADEA). Individuals may, however, be held liable under § 1981. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). In order to make out a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Id.* Given that the Court finds that Plaintiff has not sufficiently alleged facts to support an inference of discrimination based on his national origin, race, or age, against any defendant, Mr. Mansaray's claims against Mr. Robinson must be dismissed.[5]

---

[5] In granting Plaintiff leave to amend his complaint, the Court invited Plaintiff to indicate whether he intended to pursue claims against Mr. Robinson individually under the laws of the city and state of New York, which, like § 1981, permit such suits against individual supervisors. *Mansaray I*, 2021 WL 183275 at *5. Plaintiff did not do so. As the Court does not find Plaintiff to have alleged a prima facie case of discrimination against any defendant for the reasons stated above, the Court need not address liability under the laws of the city and state.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 28. The Clerk of Court is further directed to mail a copy of this order to Mr. Mansaray.

SO ORDERED.

Dated:   February 14, 2022
         New York, New York

                                                 _____
                                                 Ronnie Abrams
                                                 United States District Judge